696 So.2d 537 (1997)
Lena M. FOLDEN, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION, et al., Appellee.
No. 96-1776.
District Court of Appeal of Florida, Fifth District.
July 11, 1997.
David B. Falstad and Ronald L. Harrop of Gurney & Handley, P.A., Orlando, for Appellant.
William T. Moore, Tallahassee, for Appellee Unemployment Appeals Commission.
No Appearance for Appellee MHC Acquisition Corporation.
W. SHARP, Judge.
Folden appeals from a final order of the Unemployment Appeals Commission denying her unemployment compensation. The Commission reversed the decision of the appeals referee, which found that Folden's action in leaving her nurses' station and floor unattended, although negligent, was not disqualifying misconduct. On appeal, Folden argues that the decision of the appeals referee was supported by competent sufficient evidence and therefore the Commission erred in overturning that decision. We agree.
In February 1995, Folden was hired by Meridian Nursing Center, a rehabilitation and nursing home, to work as a full-time, licensed practical nurse. On October 15, 1995, Folden was working a nursing shift that ended at 3:15 p.m. There were two nurses on the floor working that shiftFolden and Edmond. The nurses were entitled to a morning break of 15 minutes, an afternoon break of 15 minutes and a lunch break of 30 minutes. According to the employer's policy, one nurse was supposed to be on the floor at all times.
Edmond took her afternoon break at 2:00 p.m. Folden told Edmond that she needed to take her break when Edmond returned. At about 2:25 to 2:30 p.m., Folden assumed that Edmond must have returned from her break because more than 15 minutes had passed since she left. She thought Edmond must be either in a patient's room or in the restroom.
Folden had also been informed that the nursing supervisor was on her way back to the station. Folden told the nursing assistants on the floor that she was going to take a quick break, and where she would be. She took some paperwork with her, and stepped outside the building through a side door with a glass window, which enabled her to see the nurses' station. However, Edmond had not returned from her break when Folden left. Thus, the nursing home's floor was left unattended by an LPN, contrary to the employer's policy. Folden's employment was terminated for breach of this policy.
*538 Folden's request for unemployment compensation was initially granted. The nursing home filed an appeal. The appeals referee concluded that Folden's actions warranted dismissal and that leaving the nursing home floor, while merely assuming that the other nurse had returned to duty, was negligent. Nonetheless, the appeals referee concluded that Folden's actions were not egregious enough to constitute misconduct and thus he affirmed the award of benefits. On appeal, the Commission concluded that Folden's abandonment of the floor was sufficient to establish egregious misconduct, thus disqualifying her from benefits.
The unemployment compensation law provides that no benefits may be received if an employee is discharged for misconduct connected with his work. § 443.101(1)(a), Fla. Stat. (1995). "Misconduct" is defined as:
(26) MISCONDUCT."Misconduct" includes, but is not limited to, the following, which shall not be construed in pari materia with each other:
(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. (emphasis added).
§ 443.036(26), Fla. Stat. (1995).
The courts have recognized that certain actions of employees, although warranting termination, do not constitute "misconduct" as defined by section 443.036(26), which precludes unemployment compensation. See, e.g., Fiedler v. Burdines, Inc., 654 So.2d 1276 (Fla. 2d DCA 1995) (department store sales associate's actions in giving discounts on items previously on sale and on wrinkled items, although constituting negligence, did not constitute misconduct); Bulkan v. Florida Unemployment Appeals Commission, 648 So.2d 846 (Fla. 4th DCA 1995) (automotive technician who performed repair work for a friend of the sales manager without a written work order was guilty of poor judgment but not of misconduct so as to be ineligible for unemployment compensation); Doyle v. Florida Unemployment Appeals Commission, 635 So.2d 1028 (Fla. 2d DCA 1994) (to meet the employer's burden, the employer has to show more than an employee's inefficiency, unsatisfactory conduct, or failure to perform in the work place); Rogers v. Florida Unemployment Appeals Commission, 597 So.2d 382 (Fla. 2d DCA 1992) (teacher's action in leaving class unattended to search for missing child, although violating school policy, at most showed bad judgment and not misconduct); Daniels v. Florida Unemployment Appeals Commission, 531 So.2d 1047 (Fla. 2d DCA 1988) (nurses aide's actions in leaving patient unattended to stop a patient who was apparently leaving the facility, although in violation of facility's policy, established bad judgment at the most and not misconduct); Williams v. Unemployment Appeals Commission, 484 So.2d 89 (Fla. 5th DCA 1986) (involvement of bus driver in several accidents with the bus she was driving may have been negligent and careless conduct but was neither willful, wanton nor deliberate and therefore was not misconduct which would preclude unemployment benefits).
Here the evidence supports the referee's determination that Folden was negligent in merely assuming, without actually checking, that the other nurse (or nursing supervisor) had returned to duty on the floor. Nonetheless, we do not think the evidence is sufficient to establish Folden acted with willful or wanton disregard of her employer's interests, or that she intentionally and substantially disregarded her obligations to her employer.
Folden was entitled to a fifteen-minute break and her shift ended at 3:15 p.m. By 2:25 to 2:30 p.m., the time she left for her break, there were only forty-five minutes remaining in which to take this break. Folden told Edmond that she needed to take her break when Edmond left for her break at around 2:00 p.m. Edmond should have been back on duty at 2:15 p.m.
Folden assumed (not without good reason) that twenty-five to thirty minutes after Edmond *539 left she should have been back from her break. Folden testified, "I assume that other people are responsible when we are given a fifteen-minute break to take that fifteen-minute break and then return to their post." Further, Folden did not go very far. She took her break just outside on the patio where the nurses' station could be seen. She also told the nursing assistants where she was, so she could have been quickly summoned had the need arisen.
Folden was not a registered nurse, and the 30-40 patients on her nursing home floor were not critically ill, or suffering from any life-threatening conditions. There was no evidence that a person was required to constantly monitor patients from the nursing station, as is necessary in an intensive care unit of a hospital. In fact the nursing home's policy only required an LPN to be on the floor, at all times, and that policy would have not been violated had the on-duty LPN been in the restroom rather than at the nursing station or in a patient's room. This is not comparable to a 747 pilot abandoning his cockpit for a cup of coffee, or a sentry leaving his or her post during war time.
The cases relied on by the Commission interpret misconduct as requiring repeated incidents of misconduct or violations of explicit policies after warnings. Here, Folden did receive prior warnings for improperly transferring a pharmacist's telephone call, suggesting that lotion should be used instead of alcohol to clean an elderly patient, refusing to accept a medicare patient when she believed that she was not authorized to do so and failing to fully investigate the presence of blood after reporting this matter to the nurse on duty. These warnings were totally unrelated to the October incident for which Folden was fired. Therefore this case cannot be characterized as involving repeated incidents of misconduct or violation of explicit policies after warnings.
REVERSED and REMANDED.
GRIFFIN, C.J., and PETERSON, J., concur.